```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────
SAUL SABINO,
                         Plaintiff,         21-cv-5731 (JGK)

          - against -                       MEMORANDUM OPINION
                                            AND ORDER
PORT AUTHORITY POLICE DEPARTMENT,
ET AL.,
                         Defendants.
───────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The pro se plaintiff, Saul Sabino ("Sabino"), brought this action against the Port Authority Police Department (the "PAPD"), and Port Authority Police Officers Joffre G. Cortez ("P.O. Cortez") and John-Patrick Natiku ("P.O. Natiku") (collectively, "the defendants"), alleging that the defendants violated the plaintiff's rights when Port Authority Officers used excessive force in arresting the plaintiff after the plaintiff shoplifted from a store and threatened a store employee with a hammer. For the reasons explained below, the defendants' motion for summary judgment dismissing this action is **granted**.

**I.**

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).[1] "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. However, "disputed legal questions present nothing for trial and are appropriately resolved on a motion for summary judgment." Flair Broad. Corp. v. Powers, 733 F. Supp. 179, 184 (S.D.N.Y. 1990).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the movant meets that burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether summary judgment is proper, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See id.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

2

The plaintiff initially failed to respond to the defendants' motion for summary judgment and the Court granted the defendants' request for the Court to treat the motion as unopposed. See ECF No. 209. The Court subsequently received notice that the plaintiff had been incarcerated and had not received mailings from the Court. See ECF Nos. 210, 212. The plaintiff requested the opportunity to oppose the motion, and the Court granted that request, providing that "[i]f the plaintiff does not respond by May 5, 2025, the motion will be treated as unopposed." See ECF Nos. 212, 213. The Court directed the Clerk to mail that Order to the plaintiff at the updated address he provided as well as at the plaintiff's parents' address. See ECF No. 213. The plaintiff failed to respond to the motion for summary judgment by May 5, 2025, and the Court therefore treats the motion as unopposed.

However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). The district court may not grant an unopposed motion for summary judgment "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).

3

"[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear, 373 F.3d at 244.

## II.

The following facts are undisputed unless otherwise noted.[2]

On August 10, 2020, the plaintiff shoplifted from a Marshalls department store. See 56.1 Statement ¶ 19, ECF No. 201; Compl. at 5, ECF No. 1.[3] The plaintiff alleged that he had

---

[2] Local Civil Rule 56.1 requires the moving party to submit a "short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," to which the nonmoving party must then reply by submitting "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(a), (b). Because the plaintiff has not responded to the defendants' motion and has not responded to the defendants' Rule 56.1 Statement, the assertions made in the defendants' Rule 56.1 statement, where supported by evidence in the record, are deemed uncontested and admitted for purposes of this motion for summary judgment. See T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009); Parker v. Fantasia, 425 F. Supp. 3d 171, 176 n.2 (S.D.N.Y. 2019).

[3] The plaintiff later filed first, second, and third amended complaints, adding defendants and claims. See ECF Nos. 16, 119,

4

not taken his medication for schizophrenia and bipolar disorder and that he was in the midst of a "psychotic episode" at the time of the incident. See 56.1 Statement ¶¶ 19-20; Compl. at 5; Kromm Decl., Ex. L ("Sabino Dep.") at 29:18-24, ECF No. 199. The plaintiff further acknowledges that he was under the influence of narcotics at the time of the incident. 56.1 Statement ¶ 19; Sabino Dep. at 28:7-14; Compl. at 5 (alleging that Sabino was "under the influence of a ton of street [d]rugs/[n]arcotics").

As the plaintiff was leaving the store, he was approached by loss prevention employee Vincent Johnson ("Johnson"). See 56.1 Statement ¶ 20; Kromm Decl., Ex. M ("Johnson Statement"), ECF No. 199. Suffering from a "psychotic episode," the plaintiff believed Johnson to be a "demon[] on fire," pulled out a hammer, and swung it at Johnson to "try to scare the [d]emons on [f]ire away." 56.1 Statement ¶ 20; Compl. at 5. Johnson asserted that the plaintiff threatened him with a hammer and that Johnson "ran out of the store with [the plaintiff] chasing." 56.1 Statement ¶ 21; Kromm Decl., Ex. I ("Motion to Amend") at 11, ECF No. 199.

Outside the store, Johnson encountered P.O. Natiku and P.O. Cortez and informed them that the plaintiff had a hammer and had stolen merchandise from Marshalls. See 56.1 Statement ¶ 22; see also Kromm Decl., Ex. B ("Cortez Decl.") ¶¶ 6-7, ECF No. 199;

---

126. However, the most complete statement of facts by the plaintiff is found in the original complaint.

Kromm Decl., Ex. C ("Natiku Decl.") ¶¶ 6-7, ECF No. 199. The officers pursued the plaintiff in their patrol car, identified themselves as officers over the car's loudspeakers, and ordered the plaintiff to stop. See Cortez Decl. ¶ 8; Natiku Decl. ¶ 8. Eventually, the officers were able to approach the plaintiff. See Cortez Decl. ¶ 11; Natiku Decl. ¶ 11. To prevent the plaintiff's escape, the officers engaged in "compliance holds with the [p]laintiff while he continuously refused to comply with verbal orders and actively resisted arrest by flailing arms, pulling away, and twisting his body away from" them. See Cortez Decl. ¶ 13; Natiku Decl. ¶ 13.

An independent eyewitness observed that, "[the plaintiff] ran out into the middle of the street and as [p]olice reached out he screamed 'I can't breath' before [p]olice actually touched him. The [p]olice took him down and [he] was resisting arrest by not allowing the [p]olice to handcuff him." Kromm Decl., Ex. N ("Gomez Statement"), ECF No. 199.

The plaintiff acknowledges that the defendants did not punch or kick him during the arrest. See 56.1 Statement ¶ 24; Sabino Dep. at 80:11-17, 81:6-15. Moreover, an independent witness observed that once the plaintiff was handcuffed, "the [p]olice rolled the [plaintiff] onto his side and helped him stand up." Gomez Statement. After being taken into custody, the plaintiff was transported to Bellevue Hospital Center for a

6

psychiatric evaluation. See 56.1 Statement ¶ 27; Ex Parte Kromm Decl., Ex. O ("Bellevue Hospital Records"), ECF No. 204. The plaintiff's x-ray results were normal. See 56.1 Statement ¶ 27; Bellevue Hospital Records at 47. The plaintiff's physical examination noted a "superficial round abrasion about 4 cm in diameter" on the plaintiff's right shoulder and a "round area of abrasion about 4 cm diameter" on the plaintiff's upper right arm. 56.1 Statement ¶ 27; Bellevue Hospital Records at 44. Following the arrest, P.O. Cortez was transported to New York Presbyterian Hospital and received medical treatment. Cortez Decl. ¶ 19. As a result of injuries sustained during the arrest of the plaintiff, P.O. Cortez underwent surgery on his shoulder and elbow in August 2021 and March 2022, respectively. Id. ¶ 20.

In connection with the August 10, 2020 incident, the plaintiff pleaded guilty to criminal possession of a weapon in the third degree. 56.1 Statement ¶ 11; Kromm Decl., Ex. D. ("Moses Order") ¶ 8, ECF No. 199. On December 10, 2020, the plaintiff brought this action against the defendants pursuant to 42 U.S.C. § 1983 in the District Court for the Eastern District of New York. See ECF No. 4. On July 2, 2021, the action was transferred to this Court. ECF No. 5. On September 1, 2021, the Court dismissed several of the plaintiff's claims against the PAPD, leaving only the plaintiff's excessive force claim. See Sabino v. Port Auth. Police Dep't, No. 21-cv-5731, 2021 WL

3914092 (S.D.N.Y. Sept. 1, 2021). The Court later denied the plaintiff's motion for leave to amend the complaint to add claims for malicious prosecution and violation of the Equal Protection Clause, but granted the plaintiff's motion for leave to amend to add state assault and battery claims. See Sabino v. Port Auth. Police Dep't, No. 21-cv-5731, 2024 WL 3728974 (S.D.N.Y. Aug. 7, 2024). The defendants filed an answer in response to the plaintiff's Third Amended Complaint, and now move for summary judgment, dismissing the plaintiff's claims. See ECF Nos. 188, 198.

### III.

The defendants move for summary judgment, contending that: (1) the plaintiff's section 1983 claims for use of excessive force and the plaintiff's state assault and battery claims should be dismissed because the officers used reasonable force in arresting the plaintiffs; (2) the individual officers are entitled to qualified immunity; (3) the plaintiff has failed to establish that the PAPD is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for the actions of the individual officers; (4) the plaintiff failed to serve a notice of claim on the PAPD as required by state law; and (5) the PAPD is not subject to punitive damages. The Court will address each of these arguments in turn.

**A.**

The defendants first move for summary judgment dismissing the plaintiff's section 1983 excessive force claims and state law assault and battery claims.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 146 n.3 (1979). To prevail on a section 1983 claim, the plaintiff must show that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under the color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." Brown v. City of N.Y., 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). A police officer's use of force is "excessive" in violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances known to the officer. Lennon v. Miller, 66 F.3d 416, 425-26 (2d Cir. 1995); see also Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004). "The calculus of

9

reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Under New York state law, "[w]here there is a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable." Fischetti v. City of N.Y., 158 N.Y.S.3d 163, 166 (App. Div. 2021). Moreover, "[c]laims that law enforcement personnel used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its standard of objective reasonableness." Id. "[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." Humphrey v. Landers, 344 F. App'x 686, 688 (2d Cir. 2009) (quoting Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991)).

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004). However, "the mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005).

In this case, undisputed facts support the conclusion that the officers used reasonable force to arrest the plaintiff, and that no reasonable factfinder could find for the plaintiff. To determine whether the amount of force applied to a plaintiff was unreasonable, courts consider the "the facts and circumstances of each particular case," including, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see Cugini v. City of N.Y., 941 F.3d 604, 608 (2d Cir. 2019) (balancing "an individual's Fourth Amendment interests against countervailing governmental interests, including the severity of the crime and whether the suspect poses a safety or flight risk or resists arrest"). Moreover, "[d]e minimis injury can serve as conclusive evidence that de minimis force was used." Washpon v. Parr, 561 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2008); see also Kayo v. Mertz, 531 F. Supp. 3d 774, 798 (S.D.N.Y. 2021); Drummond v. Castro, 522 F. Supp. 2d 667, 678-79 (S.D.N.Y. 2007).

Both the severity of the crime at issue and the threat to the safety of others strongly support the conclusion that the officers used reasonable force in arresting the plaintiff. During the incident, it is uncontested that the plaintiff was experiencing a psychotic episode and was under the influence of narcotics. See 56.1 Statement ¶¶ 19-20. Although the plaintiff was initially approached for shoplifting, he subsequently brandished a hammer at a store employee whom he believed to be a "demon on fire." See 56.1 Statement ¶ 20. The plaintiff ultimately pleaded guilty to criminal possession of a weapon in the third degree. Moses Order ¶ 8. Accordingly, both the severity of the crime for which the defendant was arrested and the threat that the defendant posed to Johnson and the officers support the conclusion that the officers used reasonable force in arresting the defendant.

Moreover, the plaintiff "actively resist[ed] arrest [and] attempt[ed] to evade arrest by flight." Graham, 490 U.S. at 396. After threatening Johnson with a hammer, the plaintiff fled several blocks before being arrested. See 56.1 Statement ¶ 21-22; Cortez Decl. ¶ 10; Natiku Decl. ¶ 10. An independent eyewitness confirmed that the plaintiff resisted arrest, see Gomez Statement, and P.O. Cortez required surgeries on his shoulder and elbow for injuries sustained while attempting to restrain the plaintiff during the arrest, see Cortez Decl. ¶¶

12

18-20. Accordingly, this factor supports the conclusion that the officers used reasonable force in arresting the defendant.

Finally, the plaintiff's injuries were de minimis. The plaintiff alleges that he suffered two large lacerations to his right arm, loss of feeling in his right hand and extreme lower back pain," as a result of his arrest. Compl. at 5. However, the plaintiff's hospital records do not support the plaintiff's allegations. Medical records from the date of the plaintiff's arrest found only a "superficial round abrasion about 4 cm in diameter" on the plaintiff's right shoulder and a "round area of abrasion about 4 cm diameter" on the plaintiff's upper arm. See 56.1 Statement ¶ 27; Bellevue Hospital Records at 44. Moreover, a physician retained by the defendants to examine the plaintiff concluded that the plaintiff's carpal tunnel syndrome was not caused by the August 10, 2020 incident with the Port Authority police officers. Kromm Decl., Ex. P ("Lenzo Decl.") ¶ 7, ECF No. 204. The plaintiff's "bald assertion[s]" to the contrary do "not present a sufficient disagreement to require submission to a jury." See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

In sum, no reasonable jury could find that the plaintiff was subjected to excessive force in connection with his arrest in violation of the Fourteenth Amendment or that the individual officers are liable for assault and battery against the plaintiff in violation of state law.

13

**B.**

In the alternative, the defendants argue that qualified immunity shields the individual officers from liability for the plaintiff's excessive force claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). However, because the officers did not use excessive force, the Court need not consider whether, if the officers had used excessive force, qualified immunity would nevertheless have shielded them from liability.

**C.**

The defendants next move for summary judgment dismissing the plaintiff's Monell claim against the Port Authority.[4] Section 1983 provides a cause of action for any person who has been deprived of a right secured by the Constitution or federal law under color of state law. See 42 U.S.C. § 1983. To impose section 1983 liability upon a municipality, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injuries. See Monell v. Dep't of Social Servs. of

---

[4] As a bi-state agency, Monell has been found applicable to the Port Authority. See, e.g., Mack v. The Port Auth., 225 F. Supp. 2d 376, 382 n.7 (S.D.N.Y. 2002).

City of N.Y., 436 U.S. 658, 694 (1974). In the absence of an official policy, "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," and "municipal inaction such as the persistent failure to discipline subordinates who violate [individuals'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Jones v. Town of E. Haven, 691 F.3d 72, 82 (2d Cir. 2012) (observing that there must be "sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse."). The Second Circuit Court of Appeals has held that "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." Jones, 691 F.3d at 81.

In this case, the plaintiff has failed either to allege or to provide any evidence that the PAPD either maintained an official policy that caused the plaintiff's injuries or persistently failed to discipline employees who violated individuals' civil rights. See Zahra, 48 F.3d at 685.

15

Accordingly, the plaintiff's federal claim against the PAPD is dismissed.

### D.

Additionally, the defendants contend that the state assault and battery claims against the PAPD should be dismissed because the plaintiff failed to serve a notice of claim on the Port Authority. "The Port Authority, a bi-state agency created by a compact between New York and New Jersey, enjoyed sovereign immunity until 1951, when New York and New Jersey consented to suits against it" on the condition that certain prerequisites are satisfied. Caceres v. Port Auth., 631 F.3d 620, 624 (2d Cir. 2011). These prerequisites include a 60-day notice of claim requirement and a one-year statute of limitations. See id.

Specifically, section 7107 of the Unconsolidated Laws of New York requires that (1) any suit brought against the Port Authority be commenced within one year after the accrual of the cause of action and (2) a notice of claim be served by the plaintiff on the Port Authority at least sixty (60) days prior to filing suit. N.Y. Unconsol. Law § 7107 (McKinney). Section 7108 of the New York Unconsolidated Laws requires that the notice of claim:

> [S]hall be in writing, sworn to by or on behalf of the claimant or claimants, and shall set forth (1) the name and post office address of each claimant and of his attorney, if any, (2) the nature of the claim, (3) the time when,

16

> the place where and the manner in which the claim arose, and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

Id. § 7108 (McKinney).

Courts have held that "Sections 7107 and 7108 constitute jurisdictional prerequisites to a suit against the Port Authority, and failure to comply with them 'compels the dismissal of the action for lack of subject matter jurisdiction.'" Aegis Ins. Servs., Inc. v. The Port Auth. of N.Y. & N.J., 435 F. App'x 18, 25 (2d Cir. 2011) (quoting Giannone v. Port Auth., 511 N.Y.S.2d 940, 941 (App. Div. 1987). Accordingly, the plaintiff's state law claims against the PAPD are dismissed for failure to comply with New York's notice of claim requirement.

### E.

Finally, the defendants argue that the plaintiff's request for punitive damages against the PAPD must be dismissed because PAPD is immune from such damages. The law is well-settled that municipalities are not subject to punitive damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261 (1981). "As a government entity, the Port Authority is immune from punitive damages." See Rose v. Port Auth. of N.Y. & N.J., 13 F. Supp. 2d 516, 524 (S.D.N.Y. 1998); Vernon v. Port Auth. of N.Y. & N.J., 154 F. Supp. 2d 844, 860 (S.D.N.Y. 2001); Martinez v. Port Auth.

of N.Y. & N.J., No. 01-cv-721, 2005 WL 2143333, at *1 n.2 (S.D.N.Y. Sept. 2, 2005); Urbina v. Port Auth. of N.Y. & N.J., No. 15-cv-8647, 2017 WL 3600424, at *6 (S.D.N.Y. Aug. 18, 2017). Accordingly, the plaintiff's request for punitive damages against the PAPD is dismissed.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted**. The Clerk is directed to enter judgment dismissing this action with prejudice. The Clerk is also directed to close all pending motions and to close this case. The Clerk is directed to mail a copy of this Memorandum Opinion and Order and to note mailing on the docket.

SO ORDERED.
Dated:     New York, New York
           May 7, 2025

                                    _____
                                         John G. Koeltl
                                    United States District Judge